Jorge M. IPINA, Plaintiff,

v.

STATE OF MICHIGAN, DEPARTMENT
OF MANAGEMENT & BUDGET,
Defendant.

No. G85–74 CA5.

United States District Court,
W.D. Michigan, S.D.

May 26, 1988.

Frank J. Kelley, Merry A. Rosenberg, Asst. Atty. Gen., Lansing, Mich., for defendant.

Stephen J. DeHaan, Grand Rapids, Mich., for plaintiff.

OPINION GRANTING DEFENDANT'S
MOTION FOR SUMMARY
JUDGMENT

HILLMAN, Chief Judge.

This is an employment discrimination case under Title VII. Plaintiff Jorge Ipina alleges that defendant State of Michigan, Department of Management and Budget ("DMB"), discriminated against him on the basis of his national origin by failing to promote him to an economic analyst position, level 14, within the DMB. Plaintiff was born in Bolivia and he has a Hispanic accent.

Before the court is defendant's motion for summary judgment. Defendant argues that plaintiff will be unable to prove that defendant discriminated against plaintiff because of his national origin. Plaintiff argues that a genuine issue of fact remains on this issue. At a hearing on defendant's motion held April 27, 1988, the court heard arguments from counsel and took the motion under advisement. Since that hearing, I have reviewed the arguments of counsel and the record in this case. For the following reasons, the court now grants defendant's motion for summary judgment.

*Facts*

From the documents and depositions in the record, the court has determined the

following events occurred. Plaintiff was hired by DMB in 1976 as a Policy Analyst, level 12. Six months later, he was promoted to level 13. On January 7, 1979, plaintiff took a job as an Economic Opportunity Executive, a 14 level position with another department, the Department of Labor.

In the spring of 1979, Eileen Klueckling, personnel specialist in DMB, received a request to begin the process of filling an Economic Analyst position in the office of Revenue and Tax Analysis of DMB at the 13 level. The person that had occupied the position before, Julius Chang, had left for another job. Klueckling obtained an "employment list" from the Michigan Department of Civil Service for that position, which listed potential candidates. Klueckling weeded out people on the employment list according to personnel procedures, then sent letters to the remaining qualified people on the list to inform them of the position. It was normal practice for the personnel office to define the pool of applicants who could eventually be hired for any given position in this manner.

To narrow the list down to qualified applicants, Klueckling checked various criteria, including whether the potential applicant was already appointed at the level of the open position. If a person on the list was already employed at the same level or above, personnel procedure was not to send that person a letter notifying them of the opening, but instead to put "03" by the person's name on the list. Each reason for which a person was not notified or considered had an assigned code number. Any employee interested in a position at a level equal to or less than his or her current position was expected to write and inform the department that he or she was interested in a lateral transfer or a demotion.

When Klueckling was working on the employment list for the level 13 position in May of 1979, she believed plaintiff was working at level 14 in the Department of Labor. She had never met plaintiff. Klueckling sent letters to those on the list whom she deemed qualified and eligible. Plaintiff did not receive a letter from Klueckling. Klueckling then received resumes from those who were interested and sent these resumes on to the supervisor of the position sought to be filled, Mr. Robert Kleine, Director of Revenue and Tax Analysis. The personnel office and Kleine then set up times when Kleine would interview candidates. Kleine interviewed several people for the job and eventually offered the job to Lawrence Leuzzi, a white man. Kleine testified in his deposition that Leuzzi declined because he felt the pay was too low. Kleine said it was his idea to try and hire Leuzzi at the 14 level.

In late August of 1979, Klueckling received a request to fill an Economic Analyst position at level 14 in Kleine's office. Klueckling spoke to Kleine on the phone about the position. She understood that Kleine wanted to create a new position, deputy director, with specialized qualifications. Klueckling obtained the appropriate employment list for the level 14 position and approval for qualifications from Civil Service. She transferred the information from the list she used earlier that year for the 13 level position to the new list.

Because she used the codes from the earlier list, Klueckling did not learn that plaintiff had been demoted by the Department of Labor to a 13 level on August 19, 1979. The information about his demotion would not have shown up had she looked for it until two weeks after August 19. Because Klueckling believed plaintiff was already appointed at a level 14, Klueckling placed an "03" by plaintiff's name on the list and never sent him a notification letter about the 14 level position. Klueckling also testified that even if she had learned plaintiff was then at the 13, not the 14 level, she would not have sent him a letter because he had already been appointed to a 14 level position and was able to be reinstated to the 14 level through transfer procedures. Klueckling stated that another reason plaintiff wasn't notified was that he was no longer in DMB, but was in the Department of Labor.

Klueckling sent the notification letters out on September 19 and 20. Although she did not send a letter to plaintiff, she sent a

letter to Richard Ormos, a white employee then at the 14 level. She testified that had she known Ormos was already working at a level 14, she would not have sent him a letter. Ormos sent Klueckling his resume, and she determined from his resume that he did not meet the job qualifications and that he was already at the 14 level.

Plaintiff testified in his deposition that sometime after Ormos had received the notification letter, Ormos told plaintiff about it. Plaintiff stated that he called Miss Ballard from DMB who told him that they didn't think he was qualified. There is no other evidence in the record concerning the content or the timing of the discussion between Miss Ballard and plaintiff, or Miss Ballard's role, if any, in filling the position.

Klueckling's practice was to give managers who made hiring decisions at least three qualified candidates to choose from. Among those candidates whose resumes she forwarded to Kleine for consideration were Mr. Willits, Mr. Wu, and Mr. Leuzzi. Klueckling testified that she understood Mr. Kleine was interested in Mr. Leuzzi as a candidate for the position.

In his deposition, Kleine testified that he couldn't remember who he interviewed for the 14 level position or whether he had any interviews at all. Kleine remembers that he never interviewed plaintiff, or considered plaintiff's resume, for either the 13 or 14 level position. Plaintiff's resume was never forwarded to him by personnel. Kleine ultimately decided to hire Leuzzi. At no time prior to Kleine's final selection did Kleine ever speak with Klueckling about plaintiff.

Plaintiff testified in his deposition that he thought the reason he wasn't considered was because he had a foreign accent. Kleine testified that Julius Chang, who had occupied the 13 level position until the vacancy in the spring of 1979 had slightly above average writing skills and a little below average oral presentation skills because he had a heavy accent. Giving oral presentations was only a small part of Chang's job. Kleine stated that Chang's job performance was "excellent."

When questioned in his deposition, Kleine said he knew plaintiff, but had no knowledge of his writing skills. Kleine said he thought plaintiff had a slight accent and that his communication skills seemed adequate. Kleine admitted telling an investigator from the Michigan Department of Civil Rights that he would have been reluctant to hire plaintiff had he been considered because others had told him that plaintiff's job performance "wasn't up to the highest standards." Kleine said he didn't think plaintiff "had a real good grasp of economics and tax issues." Kleine stated that any slight accent plaintiff had would not have had any effect on a decision to hire or not to hire him.

*Analysis*

Defendant's motion for summary judgment is governed by Fed.R.Civ.P. 56. Defendant, as movant, carries the burden of demonstrating that no genuine issue of material fact remains and that it is entitled to judgment as a matter of law. Under Rule 56(e), plaintiff has the burden of coming forward with evidence supporting his claim once defendant shows that there is an absence of evidence to support the non-moving party's case. *Celotex Corp. v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); Fed.R.Civ.P. 56(e). The standard under Rule 56 mirrors the standard for directed verdict: "whether the evidence presents sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 251–52, 106 S.Ct. 2505, 2512, 91 L.Ed.2d 202 (1986). The court must consider all pleadings, depositions, affidavits, and admissions on file, and draw all justifiable inferences from the record in favor of the plaintiff. *Smith v. Hudson,* 600 F.2d 60, 64 (6th Cir.), *cert. dismissed,* 444 U.S. 986, 100 S.Ct. 495, 62 L.Ed.2d 415 (1979).

Plaintiff's burden of demonstrating intentional discrimination under Title VII is well known. In disparate treatment cases, a tripartite analysis is applied: (1) the plaintiff must establish a prima facie case of discrimination, (2) the employer must

offer evidence of a legitimate, non-discriminatory reason for its actions, and (3) the plaintiff must prove that the reason offered is in fact a pretext for intentional discrimination. *See McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 801, 93 S.Ct. 1817, 1824, 36 L.Ed.2d 668 (1973); *Texas Department of Community Affairs v. Burdine,* 450 U.S. 248, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981); *Kent County Sheriff's Assn. v. County of Kent,* 826 F.2d 1485 (6th Cir.1987). "The ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff." *Burdine,* 450 U.S. at 253, 101 S.Ct. at 1093.

I conclude that even if plaintiff has succeeded in demonstrating a prima facie case of intentional discrimination, defendant has shown a non-discriminatory reason why plaintiff was not considered for the job and plaintiff has failed to submit evidence that would raise a genuine issue of fact about whether that reason is pretextual. Plaintiff was not considered for the job because Klueckling thought he was already at a comparable level and decided not to notify him of the position.

Plaintiff's premise that Kleine wanted to avoid hiring a person with a foreign accent is unsupported in the record. Even if plaintiff had submitted some evidence raising an issue of fact about how Kleine felt about plaintiff's accent, which plaintiff failed to do, there is absolutely no evidence linking Kleine's animus to Kleuckling's decision not to contact plaintiff about the position or her decision not to forward his name to Kleine for consideration.

Plaintiff argues that Kleine's efforts to secure the position for Leuzzi somehow suggest that Kleine discriminated against plaintiff because of plaintiff's national origin or accent. Even if Kleine had preselected Leuzzi for the position in his own mind, there is no evidence in the record from which a jury could infer that Kleine's desire to hire Leuzzi had anything to do with plaintiff, much less plaintiff's national origin.

Plaintiff had also failed to submit any evidence from which a fact-finder could infer that Klueckling made her decision not to contact plaintiff or not to forward his name to Kleine because of plaintiff's national origin or his accent. Finally, even crediting plaintiff's statement that someone named Miss Ballard told him he wasn't qualified, there is no evidence linking her statement to any intent to discriminate against plaintiff because of his national origin or to any decision not to notify plaintiff about the position or to forward his name to Kleine.

In sum, defendant has demonstrated that no genuine issue of fact remains concerning whether or not defendant intentionally discriminated against plaintiff and defendant is entitled to judgment as a matter of law. Judgment shall be entered for defendant. This case is dismissed.